## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

AARON TREADWAY, *et al.*,

            Plaintiffs,

v.                                   CIVIL ACTION NO. 5:06-cv-00191

BGS CONSTRUCTION, INC.,

            Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant BGS Construction, Inc.'s (BGS) Motion for Summary Judgment [Docket 84] and Plaintiffs' Motion for Partial Summary Judgment [Docket 86]. For the reasons stated herein, BGS's motion is **DENIED** and Plaintiffs' motion is **GRANTED**.

### I. BACKGROUND

*A. Procedural History*

This action, brought as a purported collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et. seq.,* was filed by Plaintiffs Aaron Treadway and Jimmy Smith against BGS on March 15, 2006.[1] Plaintiff Bernard Moore was added by way of an Amended Complaint filed on July 28, 2006. Plaintiffs, current and former employees of BGS, allege that BGS failed to pay them certain overtime wages in violation the FLSA.

After the case was filed, Plaintiffs sought to notify other similarly situated plaintiffs of this action, such that they would have the opportunity to "opt-in" pursuant to 29 U.S.C. § 216(b). In their

---

[1] The Court has jurisdiction over this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

motion to approve a collective action notice, Plaintiffs maintained that they and their co-workers were not paid overtime wages for their travel from southern West Virginia to BGS's out-of-state work sites.[2]  By Order entered October 16, 2006, the Court approved Plaintiffs' collective action notice, which was subsequently mailed to similarly situated BGS employees.  Jarod Atwell, Ronald Brooks, Larkin DeLung, Roger McDowell, Theodore Myers, Seth Proskin, and Reese Spearen opted to join in the case, and were added as Plaintiffs by way of a Second Amended Complaint filed on January 4, 2007.

During a case management conference held on September 5, 2006, the parties agreed to bifurcate this case into two parts: liability and damages.  During the period provided for discovery on liability, the parties were limited to developing the record relevant to that issue.[3]  The parties thereafter filed cross-motions for summary judgment on BGS's FLSA liability.

After review of the parties cross-motions for summary judgment, the Court deemed it necessary to conduct an evidentiary hearing to further develop the factual record relevant to the liability issue.  A hearing was conducted on June 6, 2007, at which Plaintiffs Ronald Brooks, Roger McDowell, and Jimmy Smith testified.  Mr. Allen Sloan testified on behalf of BGS.

*B. Facts*

The facts in this case are not in dispute.  BGS is a West Virginia corporation, located in Slab Fork, Raleigh County, West Virginia.  BGS is a "traveling construction company" which builds coal

---

[2] Under the FLSA, before a Court can direct the sending of notice to potential claimants with regard to the pendency of an FLSA action, the plaintiff must demonstrate that there are others who are "similarly situated" with respect to his claim that the FLSA was violated.  *See D'Anna v. MIA-Com, Inc.,* 903 F. Supp. 889, 893-94 (D. Md. 1995).

[3] The parties were not permitted to conduct discovery on Plaintiffs' damages calculations.

and stone processing plants in the eastern United States.  Most of BGS's construction work takes place outside West Virginia.

For its workforce, BGS generally hires employees who are West Virginia residents because they have certain skills and accreditation necessary for BGS's work.  Potential BGS employees learn about openings at BGS through advertisements or word-of-mouth.  BGS interviews candidates for open positions at its office in Slab Fork, or by telephone.  During interviews, BGS explains to candidates that they will be required to travel because many of its construction projects are outside West Virginia.

If a candidate is hired by BGS, he is then assigned a work location.  BGS employees are responsible for transporting themselves to the work site.  If the work site is near the employee's home (*i.e.*, in southern West Virginia), he drives himself to the work site at the beginning of the workday and returns to his home at the end of the workday.  If the assigned work site is not within a commutable distance (*i.e.*, outside of West Virginia),[4] employees work a modified schedule.[5]  For these "distant work sites," BGS employees work a two week schedule consisting of eight consecutive ten hour work days, followed by six days of no work.  Employees travel from their homes to distant work sites on the day before the first day of their eight-day work shift.  Employees return home after their work is completed on the eighth day, or on the following day.

---

[4] Employees are not permitted to chose their work location to minimize their travel.  Those refusing assignment at distant work sites are simply not given alternative assignments.  That is, they are effectively terminated.

[5] While the record does not reveal when a work site is beyond the scope of a daily commute, the parties agree that BGS's work sites at Paducah, Kentucky (a seven hour drive), and Springfield, Illinois (a nine hour drive), were not amenable to daily commuting.

During the periods when employees work at distant work sites, they arrange their own accommodations, generally sleeping in hotels or other temporary housing. In addition to their regular wages, employees are paid $5 per hour worked for room and board (*i.e.*, a *per diem*) during the days they are at distant work sites. Employees are not paid a *per diem* when they work in West Virginia.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

"In deciding whether there is a genuine issue of material fact, the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in its favor." *Am. Legion Post v. City of Durham*, 239 F.3d 601, 605 (4th Cir. 2001). A mere scintilla of proof, however, will not suffice to prevent summary judgment; the question is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party" resisting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celetex Corp.*, 477 U.S. at 323.

## III. LAW

The issue before the Court is whether Plaintiffs must be paid for their travel time from southern West Virginia to BGS work sites which are beyond the range of a daily commute. Under

the Portal-to-Portal Act, an employer is not required to compensate an employee for activities such as:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. . . .

29 U.S.C. § 254(a). The Department of Labor has promulgated regulations to explain and illustrate the application of the Portal-to-Portal Act to various travel situations. *See* 29 C.F.R. §§ 785.33-41. The general rule is that "[n]ormal travel from home to work is not worktime . . . whether [the employee] works at a fixed location or at different job sites." 29 C.F.R. § 785.35. The regulations also specify that:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties. The time is not only hours worked on regular working days during normal working hours but also during the corresponding hours on nonworking days. Thus, if an employee regularly works from 9 a.m. to 5 p.m. from Monday through Friday the travel time during these hours is worktime on Saturday and Sunday as well as on the other days. Regular meal period time is not counted. As an enforcement policy the Divisions will not consider as worktime that time spent in travel away from home outside of regular working hours as a passenger on an airplane, train, boat, bus, or automobile.

29 C.F.R. § 785.39.

*IV. ANALYSIS*

Here, it is undisputed that Plaintiffs traveled to BGS's distant work sites, requiring them to be away from southern West Virginia overnight. The parties disagree, however, on whether 29 C.F.R. § 785.39 applies to this case.

In their written memoranda, BGS argues that § 785.39 is inapplicable because Plaintiffs voluntarily chose to commute to Paducah and Springfield instead of moving to those locations. Thus, BGS believes it should not have to compensate its employees for their voluntary decision to live far away from their work site. At the June 6, 2007 evidentiary hearing, however, BGS's representative, Allen Sloan, testified that it would not make sense for its employees to relocate to a distant work site because BGS's projects are usually of short duration.[6] Thus, the Court **FINDS** that BGS has abandoned their position that Plaintiffs should not be compensated for their travel time because they could have moved closer to BGS's work sites.

At the hearing, BGS made the new argument that, under the circumstances of its employment contract with its employees, § 785.39 does not apply because its employees' "home" is the lodging they use while working at a distant work site.[7] That is, because BGS is a "traveling construction company," its employees understand that they are transient laborers who do not have a fixed work location. Thus, according to BGS, its employees' "home" changes each time they are assigned to a new construction site. Contrariwise, Plaintiffs maintain that the regulation should be interpreted to mean that their "home" is their permanent residence in southern West Virginia.

---

[6] The parties also submitted a joint exhibit which confirmed that none of these Plaintiffs worked at either the Paducah or Springfield work sites for more than ten months.

[7] Plaintiffs stayed at hotels, motels, and cabins during the eight day periods they worked at distant work sites.

The regulations do not define the term "home" and the Court has not been able to locate any interpreting case law.[8] A review of the regulations reveals that home means the discreet location where an employee lives. *See* 29 C.F.R. § 785.35 (an employee is not compensated for his travel from his home to work). As commonly understood, "Home" means "One's own dwelling place; the house in which one lives; especially the house in which one lives with his family; the habitual abode of one's family; a dwelling house. . . . Place where a person dwells and which is the center of his domestic, social and civil life." Black's Law Dictionary, 733 (6th ed. 1990). Thus, under a plain reading of the regulation, Plaintiffs' homes are in southern West Virginia and 29 C.F.R. § 785.39 applies to their travel to BGS's distant work sites.

The Court also notes that Defendant's payment of *per diem* to its employees only during the days they work at distant work sites belies their interpretation § 785.39. As noted above, Plaintiff were paid a *per diem* when they worked at distant work sites. If Plaintiffs worked in West Virginia, however, they were not paid a *per diem*. This difference in BGS's policy is certainly a recognition that its employees were away from their homes during their time spent at distant work sites.

BGS finally argues that the Department of Labor exceeded its rulemaking authority in requiring payment for travel time under the circumstances of this case. Where Congress has delegated rulemaking authority to an agency, "the agency's regulation is 'given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.'" *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 239 (2004). Congress provided the Department of Labor the authority

---

[8] In the cases which have interpreted 29 C.F.R. § 785.39 to date, the employee had one primary work location. *See e.g., Mendez v. The Radec Corp.*, 232 F.R.D. 78 (W.D.N.Y. 2005); *Troutt v. Stavola Brothers, Inc.*, 905 F. Supp. 295 (M.D.N.C. 1995).

to issue implementing regulations for the Portal-to-Portal Act. 29 U.S.C. § 259. The Court does not find that 29 C.F.R. § 785.39 is arbitrary, capricious, or manifestly contrary to the statute.

## V. CONCLUSION

For the foregoing reasons, the Court **HOLDS** that, pursuant to 29 C.F.R. § 785.39, BGS must pay Plaintiffs for their travel time from their homes in southern West Virginia to BGS's distant work sites, when such travel requires an overnight stay. BGS's Motion for Summary Judgment [Docket 84] is **DENIED** and Plaintiffs' Motion for Partial Summary Judgment [Docket 86] is **GRANTED**. The Court will enter an Order this day to guide the resolution of the remaining issues in this case. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion to counsel of record and any unrepresented party.

ENTER: September 25, 2007

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE